UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
ISSA SECK.,

                              Plaintiff,                        16 Civ. 7262 (PKC)

   -against-

                                                                            ORDER

DIPNA RX INC. d/b/a Fuller Drugs, et al.,


                              Defendants.
-----------------------------------------------------------------x
CASTEL, District Judge:

        Plaintiff's counsel in this action has moved to disqualify the undersigned pursuant to 28 U.S.C. § 455.  (Doc. 41.)  Abdul K. Hassan, Esq., asserts, among other things, that on January 31, 2018, the Court made ex parte statements prejudging his entitlement to attorney's fees, and that the Court has otherwise exhibited hostility and bias toward him.  As will be explained, Hassan's motion is premised on several factually incorrect or irrelevant assertions, including the characterization of statements made on the record and in open court at a scheduled pretrial conference as having been "ex parte."  Hassan's motion is denied.

BACKGROUND

        This action, brought principally under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 216(b), was commenced on September 16, 2016.  Plaintiff alleged that he worked six days per week in a Subway food franchise operated by defendants and was not paid at the time-and-a-half overtime rate for the 10-15 hours of overtime he worked each week.  An initial conference was scheduled by the Court but was never held.  Plaintiff sought and received an adjournment of the conference because no defendant had appeared.  Thereafter, on December 16,

2016, plaintiff filed a Notice of Voluntary of Dismissal, pursuant to Rule 41(a)(1)(A), Fed. R. Civ. P., and the case was closed.

On March 13, 2017, nearly three months after the case closed, plaintiff Issa Seck wrote to this Court stating that he had not been paid all that he was owed pursuant to a "Settlement Agreement and Release." (Doc. 16.)  This was surprising and concerning news, because the settlement and release of FLSA claims requires judicial approval under the holding of Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199 (2d Cir. 2015).  On March 17, 2017, the Court issued an Order as follows:  "By March 28, 2017, Mr. Hassan shall disclose to the Court the amount of all fees paid to him for his services with a copy of the retainer agreement. He shall also explain why the settlement agreement was not submitted to the Court for review and approval pursuant to Cheeks . . . .  Failure to comply will result in sanctions and disgorgement of all fees received by Mr. Hassan." (Doc. 18.)

On behalf of the plaintiff, Hassan moved on March 28, 2017 for approval of the settlement agreement under Cheeks.  (Doc. 20.)  The settlement agreement supplied by Hassan revealed that of the $25,000 paid by defendants he, Hassan, was to receive $13,000 in attorney's fees, and his client was to receive $12,000, with the payments to each made in installments. Hassan asserted that he had never been required to submit the settlement to the Court for Cheeks review because he had voluntarily dismissed the action without prejudice.

Hassan noted that his client Seck had disputed the fee and described him as "a clever person who worked his lawyer, the defendant and the court to his advantage . . . ." (Doc. 22 at 2-3.)  Hassan further asserted that "[i]n light of the fee dispute, I can no longer make any representations as to the reasonableness of the settlement on behalf of plaintiff – even though I do believe it is extremely fair and reasonable to plaintiff." (Id. at 1.)

In a Memorandum and Order filed on May 8, 2017, the Court concluded, for reasons explained therein, that a Cheeks review was required. Seck v. Dipna RX, Inc., 2017 WL 1906887 (S.D.N.Y. May 8, 2017). In reviewing the agreement, the Court found that the language that released Seck's claims to the extent "consistent with Cheeks" was circular and begged the question. Id. at *2. The Court also focused on the 52% award of attorney's fees to Hassan. The Court found as follows:

> The settlement agreement in this case implicates many of the core concerns raised in Cheeks. Its terms operate as a dismissal with prejudice, and includes both the release of all claims and a covenant not to reassert them in the future. The attorney's fee award amounts to 52% of the overall settlement and is challenged by the plaintiff himself. The Court's Order dismissing the action will be vacated.

Id. at *3.

The undersigned directed Hassan to file an affidavit listing all actions in this District for which he had been attorney of record subsequent to Cheeks that were dismissed pursuant to Rule 41(a)(1)(A), stating whether any consideration was paid or release given. Id. at *4.

The Court set a case management conference for May 18, 2017, which was attended by Seck and Hassan. It was the Court's only live interaction with Hassan. The Court quotes a significant portion of the transcript of the conference:

> THE COURT: Has the plaintiff demanded a jury in this case?
> MR. HASSAN: Yes.
> THE COURT: Would it be convenient to have the close of fact discovery in this case as September 29, 2017.
> MR. HASSAN: Yes, your Honor. No reason why not.
> THE COURT: Thank you. Is there any expert discovery in this case?
> MR. HASSAN: No, your Honor. I don't anticipate any and in these cases I've never had expert discovery.
> THE COURT: All right. That's fine. I'll have you back in mid-October. My deputy will get us a date. And it will be included in

>    the order.  And the Order will be up on ECF.  Madam deputy, I just
>    tendered to you the order.  Is there anything further from you, Mr.
>    Seck?
>    MR. SECK: No, your Honor.
>    THE COURT: Anything further, Mr. Hassan?
>    MR. HASSAN: No, your Honor.  We'll follow up and we'll try to
>    do whatever is best for Mr. Seck.
>    THE COURT: Thank you very much.  We are adjourned.
>    MR. HASSAN: Thank you.
>    (Adjourned)

(May 18, 2017, Tr. at 3-4, at Doc. 29.)

The next conference was set for October 13, 2017.  On August 17, 2017, Hassan wrote to the Court for guidance suggesting that he may have a conflict of interest with Seck because of the position Seck had previously taken with the Court.  (Doc. 31.)  The next day, the Court issued an Order, in part, as follows: "ORDER: The Court has Mr. Hassan's letter of August 17 in which he appears to acknowledge that there is a conflict between his client's interests and his own.  If that is the case (as it appears to be), Mr. Hassan should promptly move to withdraw as counsel.  In contemplation of Mr. Hassan's withdrawal, discovery is extended to November 10, 2017.  The Conference scheduled for October 13 is adjourned to November 29, 2017 at noon." (Doc. 32.)  To date, and insofar as this Court can discern from the record, Hassan has never moved to withdraw and the Court has never granted him leave to withdraw.  He remains counsel of record.

Seck wrote to the Court asking for an adjournment of the November 29 conference until after January 1, 2018 because of a pressing family matter.  (Doc. 34.)  The Court entered an order extending discovery to December 20, 2017 and setting the conference for January 4, 2018.  (Doc. 35.)  The Court was closed on January 4 and the conference was rescheduled in a written order to January 31, 2018.  (Doc. 36.)

Hassan did not appear at the January 31 conference. He did not seek an adjournment of the conference. Other than the filing of a proof of service by Hassan on August 24, 2017, the Court heard nothing from Hassan until the March 8, 2018 filing of the motion to disqualify the undersigned. (Doc. 41.)

At the January 31 conference, on the record in open Court, the undersigned inquired of Seck as follows: "What I want to find out from you is what you would like to do with this case. Maybe you can start with how much money were you paid under the settlement agreement." (Tr. 3, at Doc. 39.) Seck explained that his deal with Hassan was that "[a]ny money we receive, we're going to split in in three; I take two-thirds and he take one." (Id.) He stated that he signed the relevant paperwork without reading it, but that when he later reviewed the papers, he learned that Hassan was taking more than 50% of the recovery. (Id. at 3-4.) It is Seck's view that since a total of $25,000 was paid, Hassaan should get no more than $8,333, and that Hassan should refund the difference between the $13,000 he says that Hassan received, which is a sum of approximately $4,667. (Id. at 8.)

The Court advised Seck that his case would be placed on a list for possible pro bono representation. The Court added, "And we will try and get you a lawyer. The lawyer can advise you on whether you have any rights against Mr. Hassan, whether your remedy is to require him to give back the money or whether your best approach is to asset other relief against your former employer. But it sounds to me like your former employer paid the $25,000 and so it may well be that your remedy is against Mr. Hassan." (Id. 8.) The Court further indicated that it would issue an order to show cause to Hassan explaining why he should not be required to disgorge the sum of $4,667, which it filed on February 1, 2018. (Id.; Doc. 37.)

DISCUSSION

The Supreme Court in <u>Liteky v. United States</u>, 510 U.S. 540, 555 (1994), reviewed the standards for disqualification not arising from the judge's acquisition of information from extra-judicial sources:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

A section 455(a) motion is "to be evaluated on an <u>objective</u> basis, so that what matters is not the reality of bias or prejudice but its appearance." <u>Id.</u> at 548 (emphasis in the original). "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality recusal motion . . . ." <u>Id.</u> at 555. The Second Circuit, applying <u>Liteky</u>, has said that on a section 455(a) motion "[t]he question . . . is whether 'an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal.'" <u>ISC Holding AG v. Nobel Biocare Finance AG</u>, 688 F.3d 98, 107 (2d Cir. 2012) (quoting <u>United States v. Carlton</u>, 534 F.3d 97, 100 (2d Cir. 2008)) (alteration in original).

In support of disqualification, Hassan asserts that the January 31 conference was an improper <u>ex parte</u> communication. The position is without merit. Hassan remains counsel of record for Seck, and he was required to attend the January 31 conference. He sought no adjournment of the conference. He sent no letter to the Court in the week following the conference explaining his absence. The Court concludes that Hassan's absence was unexcused and intentional. It was appropriate for the Court to proceed with the conference, and Hassan's description of that conference as "<u>ex parte</u>" is meritless. See <u>Stevenson v. Bank of Am., N.A.</u>,

6

597 Fed. App'x 4, 6 (2d Cir. 2015) ("the on-the-record hearing, of which Appellants had notice and neglected to attend, does not constitute an improper ex parte contact.") (summary order).

Hassan claims that the following comment at the January 31 conference is reflective of bias against Hassan's claim of fees: "Yes, but I wrote a decision in which I said that Mr. Hassan was supposed to have submitted the settlement to the Court for review. Had I reviewed that settlement, I never would have approved the lawyer getting 13,000 and the client getting 12,000." (January 31, 2018, Tr. 7.)  Hassan characterizes this as prejudging the Order to Show Cause on disgorgement.

Respectfully, Hassan's chronology of events is inaccurate. True, the Court did not review the settlement at the time it was entered into because it was not submitted for review. But in response to an Order of this Court, Hassan later filed a motion for Cheeks approval, arguing the merits of his fees. (Hassan Ltrs. of March 28 and April 11, 2017, at Doc. 20 & 22.) The Court in the Memorandum and Order of May 8, 2017 rejected the settlement, noting in addition to the scope of the release the concern that "[t]he attorney's fee award amounts to 52% of the overall settlement and is challenged by the plaintiff himself." 2017 WL 1906887, at *3. Fees, of course, need not be in proportion to a party's recovery, and under appropriate circumstances may be much larger than the recovery. But in the context of this action, which was resolved without an appearance by the defendant and within three months of its commencement, the Court declined to approve a $25,000 settlement that included attorney's fees of 52%. That ruling was filed on May 8, 2017. The Court did not prejudge the matter. It adjudicated the matter after hearing from Hassan.

Hassan asserts that it was "highly improper" for this Court to reference Hassan's involvement as attorney of record in the original Cheeks case, and states that it reflects

impermissible bias against him.  (Doc. 42 at 14-15.)  In its Memorandum and Order, the Court wrote as follows:  "Hassan, who had been counsel to the losing party in Cheeks, asserted that no judicial review of the settlement was required, relying on footnote 2 of Cheeks, which left 'for another day' the question of whether a 'stipulation without prejudice' requires review."  2017 WL 1906887, at *1.  The Court's statement is factually accurate and no argument to the contrary has been raised.  More importantly, Hassan himself was the source of the Court's information that he was counsel in Cheeks.  In his letter to the Court of March 28, 2017 seeking approval of the settlement, he wrote as follows: "Ironically, one of the significant cases Mr. Hassan has litigated is Cheeks . . ., which imposed the court approval requirement in certain FLSA cases."  (Doc. 20 at 4.)

        Another of Hassan's claims is that at an earlier point in time, apparently preceding the filing of the Complaint in this action, a book on the topic of attorney sanctions was openly displayed on a desk in the undersigned's robing room.  Hassan states that the display of this book reflects a predisposition against attorneys and their "legitimate advocacy."  (Doc. 42 at 21.)  Hassan states that when he asked at a conference in another case why the book was not on the desk, the Court responded that a lawyer had voiced a complaint about it to the undersigned and so the undersigned placed it in a drawer.  (Id.)  The Court accepts the foregoing as true.  The book was G. Joseph, Sanctions: The Federal Law of Litigation Abuse (4th ed.).  But Hassan's observation is utterly beside the point.  Neither the book's location on a desk nor its placement in a drawer reflects bias against attorneys or zealous advocacy.  Indeed, there is no claim that Hassan saw the book at any time during the pendency of this case.  There is no claim that Hassan set foot in the Court's robing room during the pendency of this case or spoke to the Court other than at the May 18, 2017 conference on the record and in open court.

Hassan also points out that there have been other cases before the undersigned since Cheeks that were dismissed without prejudice and no action was taken thus showing a selective bias towards him. (Doc. 42 at 17-19.) But a dismissal without prejudice, standing alone, does not in and of itself require Cheeks review. It is a purported full and final release of a FSLA claim by the plaintiff in exchange for the payment of money that makes a dismissal without prejudice the functional equivalent of a dismissal with prejudice, thereby triggering Cheeks review. The Court relies on counsel to bring to the Court's attention settlements requiring Cheeks review. Notably, this Court took no action when this case was voluntarily dismissed without prejudice. Nearly three months passed before the Court learned from Seck's submission that there had been an undisclosed settlement that included payment of money to him.[1]

Finally, Hassan asserts that the Court had no basis for saying or implying that he had been paid $13,000 by the defendants. The information that he actually had received $13,000 did not come out of thin air. The defendants were obligated under the settlement to pay Hassan $13,000, and Seck told the Court that Hassan had, in fact, been paid that sum. (January 31, 2018, Tr. at 8.) The Court has issued an Order to Show Cause to allow Hassan to be heard, and the Court will review his submission in due course.

CONCLUSION

Taken together and viewed as a totality, an objective, disinterested observer fully informed of the underlying facts (including all arguments made in Hassan's submission, whether

---

[1] Hassan brings to the Court's attention a single case where the parties advised the Court of a settlement, and there appears to have been an order dismissing the case with a right to reopen if the settlement was not consummated. This occurred about 7-1/2 months after the decision in Cheeks. Neither side sought Cheeks approval. The apparent failure of this Court to spot the issue hardly supports the claim that Hassan is being singled out for unfavorable treatment.

9

expressly referenced or not) would not entertain significant doubt that justice would be done in this action absent recusal of the undersigned. The motion is DENIED. (Doc. 41.)

      SO ORDERED.

_____<br>
P. Kevin Castel<br>
United States District Judge

Dated: New York, New York<br>
       March 14, 2018